**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>William Maxwell Gregg, II,<br><br><br><br>Debtor. | Case No. 13-00665-dd<br><br>Chapter 11<br><br>**ORDER DENYING MOTION TO<br>SELL FREE AND CLEAR** |

This matter is before the Court on a motion filed on November 6, 2013, by the debtor, William Maxwell Gregg, II ("Debtor"), for approval of the sale of 38.6 acres of real property in Mount Pleasant, South Carolina ("Mount Pleasant tract") free and clear of liens, claims, and encumbrances under 11 U.S.C. § 363. Jupiter Capital, LLC ("Jupiter") and German American Capital Corporation objected to the motion. The Court held a hearing on the motion on February 10, 2014, at which it denied the motion on the record and indicated a written order would follow.

**FINDINGS OF FACT**

Debtor filed this case under chapter 11 of the Bankruptcy Code on February 1, 2013. Debtor's primary assets are various pieces of real property that Debtor values at $389,645,000 on his schedule A, including the Mount Pleasant tract, which he values at $30,000,000. Jupiter holds a lien on the Mount Pleasant tract. On his schedule D, Debtor places the amount of the debt owed to Jupiter secured by its lien at $8,200,000. In its objection, Jupiter places the amount of the debt owed to it, as of January 31, 2014, at approximately $9,357,118.

Debtor purchased the Mount Pleasant tract in 1988 and planned to place a production facility on it, but he was denied the zoning that he sought. A couple of years later the zoning was approved for a business park. This venture failed to materialize, and Debtor did little with the

1

property until 2007.  Debtor entered into a contract in 2010 with Henrich Development Company ("Henrich") under which Henrich would purchase the property for $20,500,000, and give Debtor a ten percent interest.  Henrich planned to place a Home Depot, Costco, and Dick's Sporting Goods on the property.  The contract had numerous conditions, fell apart, and never closed.  Debtor filed bankruptcy shortly thereafter.

In Debtor's motion, he requests the Court approve a sale of the Mount Pleasant tract to the successful bidder at an auction that was to be held on February 10, 2014.  CK Multifamily Acquisitions, LLC ("CK") agreed to serve as the stalking horse bidder at the auction with a bid of $11,500,000, and the Court entered a bid procedures order on November 25, 2013.  At several hearings prior to February 10, 2014, Debtor expressed optimism there would be competing bidders at the auction and that some of the conditions in the contract with CK would be eliminated through the competitive process.  However, there were not any competing bids.  Consequently, Debtor requests the Court approve the sale to CK at $11,500,000 with the terms and conditions contained in the contract with CK.

> These terms and conditions include certain Required Approvals:
>
> (i) allocation of the necessary utilities in sufficient capacities to serve [CK]'s intended development . . . to contain a minimum of 500 multifamily apartment units and a minimum of 120,000 square feet of retail development (collectively, the "**Intended Development**"); (ii) curb cut approvals or driveway permits from the applicable governmental authority; (iii) all governmental permits or approvals (including any permits or approvals from the Army Corps of Engineers) necessary to develop [CK's] Intended Development; (iv) all necessary approvals required to construct and operate [CK's] Intended Development from any private architectural review authority with architectural approval rights pursuant to applicable restrictive covenants; (v) any permits or approvals required by [CK] in connection with [CK's] Intended Development, including rezoning, concept plan and site plan and record plat approvals with grading and building permits; and (vi) annexation of the [Mount Pleasant tract] and Additional Parcels into the Town of Mt. Pleasant (collectively, "**Required Approvals**").

2

The Additional Parcels are four parcels adjacent to the Mount Pleasant tract, each of which is owned by a different person other than Debtor.  An individual associated with Henrich purchased one of the Additional Parcels within the last thirty to sixty days.  The contract is conditioned on CK securing "on terms acceptable to [CK] written binding agreements to purchase (in addition to the [Mount Pleasant tract]) all of the Additional Parcels" and closing "on the Additional Parcels simultaneously with the closing of the [Mount Pleasant tract]."  The contract is also conditioned on CK receiving "the Required Approvals subject only to such terms and conditions as are reasonably acceptable to [CK]."  Furthermore, "[a]ny appeals or limitations period for challenges to the Required Approvals must have expired without any appeal or challenge pending or threatened."  Additionally, the contract contains a condition that CK have received "all applicable approvals required to remove the detention pond currently located" on the Mount Pleasant tract and "redirect storm water flow to the creek located on the [tract], all upon such terms and conditions as are reasonably acceptable to [CK]."  CK may until the earlier of December 31, 2014, or the Closing Date terminate the contract and receive a refund of its $200,000 deposit if it determines that any of the conditions are not going to be satisfied on or before the Closing Date.[1]  The Mount Pleasant tract is currently zoned multifamily and has single-family dwellings on two of its three sides.

Debtor and a representative of CK testified at the hearing in support of the sale.  Debtor expressed an inability to answer some of the questions regarding the Mount Pleasant tract posed by creditors on cross-examination, including questions regarding the zoning for the property at the time he entered into the contract with Henrich and questions regarding efforts to obtain the rezoning needed for Henrich's planned development and the opposition that rezoning effort

---

[1] The Closing Date is defined under the contract as the sixtieth day following the satisfaction of the conditions contained in section twelve of the contract.

faced. Debtor also testified it had been six months since he read the contract with CK and could not explain how the contingencies in the contract with CK were different than the contingencies in the Henrich contract. Debtor testified moving the detention pond was not a problem, storm water already flowed to the creek behind the property, and the Mount Pleasant tract and Additional Parcels were to the best of his knowledge already annexed into Mount Pleasant. Debtor indicated that regardless of the purchaser, rezoning would be necessary to maximize the value of the Mount Pleasant tract. The CK representative testified that Mount Pleasant planning staff are supportive of the Intended Development, but town council ultimately would have to approve the zoning change. The representative also testified CK "definitely need[s]" the Additional Parcels. Jupiter indicated at the hearing that it was prepared to make a credit bid under 11 U.S.C. § 363(k) for the property up to the amount of its lien and close within approximately thirty days.

Debtor does not have an approved disclosure statement in place at this time. Debtor's disclosure statement and plan were originally due July 31, 2013. *See* Bankr. D.S.C. R. 3016-1(a). The Court granted Debtor an extension until September 29, 2013. Debtor filed his initial disclosure statement and plan on October 8, 2013. Under means for implementation, the October 8th disclosure statement simply stated Debtor would sell sufficient real estate over a sixty-month period to pay all allowed claims and that secured creditors would be permitted to credit bid on proposed asset sales. Four creditors and the U.S. Trustee objected to the disclosure statement. The Court denied approval of the disclosure statement on November 21, 2013, and gave Debtor fourteen days to file an amended disclosure statement. Debtor filed an amended disclosure statement on December 5, 2013, which stated Debtor would fund his plan by selling sufficient real estate over a thirty-six month period and that secured creditors would be permitted to credit

4

bid.  The December 5th disclosure statement also referenced the proposed sale of the Mount Pleasant tract and provided that if the sale did not generate sufficient funds to pay his creditors in full, he would "begin to list his remaining real property with real estate brokers and . . . sell such property until his debts are paid in full."  Three creditors and the U.S. Trustee objected to the December 5th disclosure statement.  At a hearing on January 23, 2014, the Court continued the hearing on the disclosure statement to February 10, 2014, and gave Debtor an opportunity to file an amended disclosure statement addressing the objections raised.  Debtor filed a further amended disclosure statement on January 31, 2014.  The January 31st disclosure statement shortened the time period during which Debtor would attempt to sell real property to twenty-four months and provided that an auction would take place to sell sufficient real property to pay any secured debt remaining after the twenty-four months, with said auction taking place within six months of the end of the twenty-four months.  At the February 10th hearing, the Court denied approval of the disclosure statement.

## CONCLUSIONS OF LAW

The Bankruptcy Code does not require a chapter 11 debtor to propose a plan of reorganization before moving to sell its assets outside the ordinary course of business.  *See* 11 U.S.C. § 363(b); *WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistance Serv.* (*In re WBQ P'ship*), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).  "Nevertheless, to prevent debtors from using § 363(b) as a vehicle for circumventing the creditor protections afforded under Chapter 11, . . . courts have imposed their own requirements for allowing liquidation sales before plan confirmation."  *WBQ P'ship*, 189 B.R. at 102.  This Court and others have adopted the sound business test as the standard to be applied in considering approval of a preconfirmation sale of a

5

debtor's assets in chapter 11 case. *See In re Taylor*, 198 B.R. 142, 157 (Bankr. D.S.C. 1996); *WBQ P'ship*, 189 B.R. at 102. To meet the sound business test, a trustee or debtor-in-possession has the burden of proving four elements: "(1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to interested parties; and (4) the purchase price is fair and reasonable." *Id*. Moreover, in considering whether to approve a sale of assets outside the ordinary course of business, this Court must "'consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders.'" *Official Comm. of Unsecured Creditors of Enron Corp. v. Enron Corp.* (*In re Enron Corp.*), 335 B.R. 22, 28 (S.D.N.Y.) (quoting *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A sale of assets is appropriate if all provisions of § 363 are followed, the bid is fair, and the sale is in the best interests of the estate and its creditors.").

After careful consideration of the evidence presented, the Court finds Debtor has not met its burden of proving all of the elements of the sound business test or that the sale of the Mount Pleasant tract under the terms and conditions contained in the contract with CK is in the best interest of the estate and its creditors. Debtor's personal inability to answer some of the questions posed by creditors at the February 10th hearing and lack of knowledge about the terms of the contract with CK at various hearings in this case is not indicative of a debtor-in-possession who takes his fiduciary duties to his creditors seriously. *See* 11 U.S.C. § 1107(a). Debtor was unable to testify as to the zoning for the Mount Pleasant tract at the time he entered into the contract with Henrich and was unable to describe with particularity the opposition Henrich faced

6

in its rezoning effort, which is especially relevant considering CK would also have been seeking rezoning. Whether Debtor personally understands his duties as debtor-in-possession aside, the terms of the contract with CK are simply too speculative, as it results in the Mount Pleasant tract being placed for the remainder of this year under a contract with conditions that may never be met and result in the purchase never closing. Even if the Court were to approve the rezoning condition in spite of the lack of evidence regarding the opposition previous rezoning efforts faced, there is the remaining condition that CK acquire the four Additional Parcels on "terms and conditions as are reasonably acceptable to [CK]." The CK representative testified that CK "definitely need[s]" the four additional parcels. Each Additional Parcel is owned by a different person and one of the parcels was recently acquired by an individual associated with a company that sought to develop the Mount Pleasant tract prior to Debtor filing bankruptcy. This case has been pending for over a year, and Debtor neither has an approved disclosure statement in place nor has a confirmation hearing been held or even scheduled. Creditor support for Debtor's reorganization plans has been non-existent thus far. There are a multitude of directions in which this case could go at this juncture, including a liquidation controlled by Debtor as he desires, a liquidation controlled by a chapter 11 trustee, a conversion to chapter 7, or a dismissal. Given the current status of this case, Debtor's request for approval of a preconfirmation sale that would tie the Mount Pleasant tract, which is Debtor's second most valuable asset according to his schedules, to a contract, the fate of which is subject to conditions that may not be satisfied and to the whims of four different persons any one of whom could block it from closing, for the remainder of this year is denied.[2]

---

[2] Debtor places his most valuable asset at $326,000,000 in his schedules. However, this value is based on the property being used as a quarry, which similar to the Mount Pleasant tract, is not a use for which it is currently zoned. In 2005 when Debtor was going through a divorce,

**CONCLUSION**

For the reasons set forth herein, Debtor's motion for approval of the sale of the Mount Pleasant tract free and clear of liens, claims, and encumbrances under 11 U.S.C. § 363 is denied.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/25/2014**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 02/26/2014

---

Debtor valued the quarry property at $400,000 based on its use at that time. *See* docket # 134, p. 5.