**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: ) | |
| ) | Bankruptcy Case No. 13-00665-dd |
| William Maxwell Gregg, II, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| _____) | **ORDER DENYING RELIEF FROM STAY** |

This matter is before the Court on Creditor Jupiter Capital, LLC's Motion for Relief from Stay and its Amended Motion (collectively, "Motion"). After careful consideration of the applicable law, arguments of counsel, and evidence submitted, Jupiter Capital's Motion is denied.

## I. Summary of Facts and Procedural History

Debtor William Maxwell Gregg, II filed for protection under chapter 11 of the Bankruptcy Code on February 1, 2013. The Debtor's assets primarily consist of parcels of real property in South Carolina. Jupiter Capital has a first priority lien on two of the parcels, a 38.52 acre parcel in Mount Pleasant and a 12.02 acre parcel in Richland County (collectively, "the Properties"). As of the date of the filing of the Motion, Jupiter Capital contends that the outstanding amount on the lien totaled $9,856,018.35 with interest accruing at a rate of $1,822.22 per diem. Jupiter Capital asserts that the Properties are worth $10,130,000. The Jupiter Capital loan matured pre-petition and Jupiter Capital initiated foreclosure proceedings that were stayed by the bankruptcy. The Debtor has not made any payments to Jupiter Capital since the filing of the bankruptcy.

While acting as debtor-in-possession, the Debtor had a variety of issues with moving the bankruptcy case forward. Accordingly, upon motion of the United States Trustee, the Court ordered a trustee appointed and R. William Metzger, Jr. was appointed trustee ("Trustee") in the

1

case. On August 25, 2014, at the request of the Trustee, the Court entered an Order, over the objection of Jupiter Capital, approving the sale of the Properties free and clear of liens to Emerson Ventures, II, Inc. and Johnson-Mount Pleasant Investments, LLC (collectively, "Buyer"). The contract provides for a $12,500,000 purchase price for the Properties and a closing date of September 30, 2014. The Buyer has the right to extend the closing date multiple times by providing the Trustee with additional nonrefundable deposits. The contract set a final closing date for December 30, 2014. The purchase price will pay Jupiter Capital's lien in full.

Jupiter Capital filed its Motion for Relief on September 12, 2014, and its Amended Motion two days later. In its Motion, Jupiter Capital requests relief pursuant to 11 U.S.C. § 362(d)(1), "for cause," alleging that its rights are not adequately protected because the Debtor has defaulted on the loan and has failed to make payments since the default. Jupiter Capital also requests relief under 11 U.S.C. § 362(d)(2), arguing that there is no equity in the property and that the property is not necessary for an effective reorganization. Jupiter Capital asserts it is only requesting relief to restart foreclosure proceedings while the sale is still pending, and that it will not schedule a sale until after December 30, 2014, when the contract extension expires.

The Trustee, the Buyer, the Debtor, and creditor German American Capital Corporation all object to Jupiter Capital's Motion. The parties, primarily through the Trustee, argue that relief for cause is not warranted because Jupiter Capital cannot show any justification or harm in waiting until after the extensions expire to resume foreclosure. They also argue that Jupiter Capital's interest is adequately protected because it will either be paid in full upon the closing of the sale or, if the contract falls through, is protected by an equity cushion and an estate augmented by the nonrefundable deposits. The Trustee further argues that relief is not warranted under 11 U.S.C. § 362(d)(2) because there is equity in the property and the property is necessary

2

for an effective reorganization. The Trustee additionally asserts that permitting Jupiter Capital to pursue foreclosure would substantially undermine Buyer's ongoing negotiations with others that will precede the closing of the sale and potentially prevent the contact from being consummated. Finally, the Trustee argues that Jupiter Capital's request should be equitably barred because the Trustee offered to make adequate protection payments which Jupiter Capital refused.

The Court held hearings on the Motion October 20, 2014 and November 5, 2014. At the first hearing, Jupiter Capital presented testimony from its managing member establishing the loan and Jupiter Capital's weariness with the bankruptcy proceedings. Jupiter Capital also read into the record testimony of two real estate agents that appeared at this Court's August 21, 2014 hearing on the sale motion. The agents testified that the purchase price for the Properties was higher than their appraised value, which, together, at the lowest value, is approximately $10,130,000. They also testified as to the various problems each had selling the parcels. Specifically, the Richland property is on a floodplain and subject to an easement, and the Mount Pleasant property has zoning issues. According to the agents, these issues resulted in the Debtor being unable to close sales on the Properties for nearly a decade.

The Trustee testified at the second hearing. He explained to the Court the progress the parties had made towards closing the sale. The Trustee stated that the Buyer had succeeded in getting zoning requests pertaining to the Mount Pleasant property before the local board and believes those requests will be granted prior to the contract expiration date. Once the property is rezoned or closer to rezoning, he believes the sale will close. He also testified that, based on his experience in the negotiations, permitting Jupiter Capital to resume foreclosure, even with a sale scheduled after the expiration of the contract, would be detrimental to the Buyer's negotiations because it would confuse the other parties to the negotiations as to the status of the property.

3

The Trustee further testified regarding the effect of the sale on the estate. He stated that the Mount Pleasant property is the second most valuable asset of the estate. Once the sale closes, the estate anticipates receiving about $2,000,000 in net proceeds. This money will fund the plan. The Trustee has not yet finalized a plan, but is working on a "consensual plan" that he believes will be ready to present to the Court in "short order." He asserted that the proceeds from the sale will constitute about 40 percent of the money in the estate available for administrative claims and unsecured creditors.

The Buyer's representative also presented testimony at the second hearing. He testified that the rezoning the Buyer was seeking with regards to the Mount Pleasant property is on track to be approved by mid- December. He stated that the Buyer has spent a significant amount of money attempting to close on this project and continues to do so. He explained that finalizing the sale was a delicate issue because of the history of past interested buyers and concerns of the owners of the neighboring properties and zoning officials as to the likelihood that any project will come to fruition. Any sign that the sale would not be consummated would likely end the negotiations and the rezoning process. He was confident, however, that the sale would close.

**II.     Legal Standards**

Section 362(a) of the Bankruptcy Code provides that upon the filing of a petition actions against the debtor and its property are stayed. This does not mean, however, that a creditor is without recourse to protect its interest. Section 362(d) recognizes certain situations where a party subject to the stay is entitled to relief. Relevant here are two such circumstances: first, a party is entitled to relief "for cause, including the lack of adequate protection of an interest in property of the debtor." 11 U.S.C. § 362(d)(1).  Second, a court must grant relief to a party if (1) the debtor

4

lacks equity in the property subject to the party's interest, and (2) the property "is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

The Bankruptcy Code does not define "cause." The court's determination of cause must be fact specific and look to the totality of the circumstances. *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992). In general, determining whether relief for cause is warranted requires the court to balance the "potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred" by the party seeking relief. *Id.* The Code also does not define "adequate protection," however, § 361 provides examples of what can constitute adequate protection, such as periodic payments or replacement liens. Many courts consider the existence of an equity cushion to adequately protect a creditor's interest. *E.g., Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203 (1st Cir. 1995). The party opposing relief from stay has the burden of proving an absence of cause and that the creditor is adequately protected. 11 U.S.C. § 362(g)(2).

To determine whether relief is warranted under § 362(d)(2), the court must first determine whether there is equity in the property. 11 U.S.C. § 362(d)(2)(A). A debtor has no equity in the property if the total value of all the liens exceeds the value of the property. *Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 206 (3d Cir. 1995). The party requesting stay relief bears the burden of showing a lack of equity. 11 U.S.C. § 362(g)(1). A court must also determine that the property is necessary for the reorganization. 11 U.S.C. § 362(d)(2)(B). This means that the reorganization must not only be conceivable, but that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Savs. Assoc. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484

5

U.S. 365, 376 (1988) (citation omitted). The party opposing relief bears the burden of proving the property is necessary for the reorganization. 11 U.S.C. § 362(g)(2).

### III.   Discussion

Jupiter Capital first argues that it is entitled to relief under § 362(d)(1) because its interest is not adequately protected. The thrust of its argument is that the bankruptcy has now been ongoing for nearly two years and Jupiter Capital no longer wants to wait to foreclose. The Court finds this argument unpersuasive in light of the circumstances of this case. The Properties are under contract for a purchase price that will pay Jupiter Capital's claim in full. Although the sale has not yet closed, the Trustee and the Buyer provided persuasive evidence of progress toward a closing within the next two months. Jupiter Capital conceded that it appears the sale will close. Jupiter Capital did not present any evidence demonstrating that its interest is eroding, that it is suffering prejudice, or that there exists additional cause to lift the stay.

In contrast, the Trustee did show that there exists sufficient funds to compensate Jupiter Capital for any delay, and that cause exists to keep the stay in place. The evidence supports the Trustee's concern that permitting Jupiter Capital to resume foreclosure proceedings would be detrimental to the sale closing. The negotiations the Buyer has engaged in are sensitive, expensive, and involve multiple parties. The Mount Pleasant property has had multiple potential buyers over the past eight years and none of them have been able to close on the sale because of failed negotiations with the neighbors and the local zoning commission. The resumption of a foreclosure proceeding may unduly confuse the negotiations, potentially leading some to doubt the intentions of the Buyer, and adversely impact the sale process. Jupiter Capital has not shown that its interest will be prejudiced by waiting until the sale deadline passes. The potential

prejudice to the estate if this Court would grant relief far outweighs the hardship to Jupiter Capital. Granting stay relief pursuant to § 362(d)(1) is therefore not appropriate.

Granting stay relief pursuant to § 362(d)(2) is also inappropriate. Although the parties dispute how much equity is in the property, they do not dispute, and the Court so finds, that there is at least marginal equity. Also, the property is clearly necessary for the reorganization. The Trustee anticipates that the sale proceeds will fund nearly half of the plan's distribution. If Jupiter Capital were permitted to resume the foreclosure process, none of those funds would be available to the estate. The property has equity, the Trustee has a plan, and that plan is heavily funded from the sale proceeds. Relief from stay is not appropriate under these circumstances. If there is undue delay or a change in circumstances, Jupiter Capital can quickly renew its request for relief.

### IV.     Conclusion

For the reasons set forth above, the Court denies Jupiter Capital's motion for relief from stay without prejudice.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**11/07/2014**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 11/07/2014